USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/27/2026

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA,

- against -

SUNIL PATEL, RATANSHA VAKIL, AND
LAKHMICHAND LOHANI,

                    Defendants.

---

**25 Cr. 00173 (VM)**

**ORDER**

**VICTOR MARRERO, United States District Judge.**

By indictment dated April 15, 2025 (the "Indictment"), a grand jury charged defendants Sunil Patel ("Patel"), Ratansha Vakil ("Vakil," and collectively with Patel the "Moving Defendants") and Lakhmichand Lohani ("Lohani" and collectively with Patel and Vakil, the "Defendants"). The Indictment accused Defendants of conspiracy to commit money laundering, conspiracy to commit bank fraud, and bank fraud in violation of 18 U.S.C §§ 1956(h), 1349, and 1344 and 2. (See Dkt. No. 20.)

Patel and Vakil move to: (1) suppress all evidence seized pursuant to a March 14, 2025, search warrant; (2) suppress all evidence seized pursuant to a March 17, 2025, search warrant; and (3) compel the production of data from Vakil's email and cellphone. In the alternative to the suppression of evidence, both motions seek an evidentiary hearing.

For the reasons set forth below, the Moving Defendants' motions (Dkt. Nos. 44 and 47) are **DENIED**.

## I. BACKGROUND

On March 10, 2025, the Government filed a complaint (the "Complaint" or "Compl.," Dkt. No. 1) alleging that the Defendants committed: (1) one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), (2) one count of conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349, and (3) one count of bank fraud, in violation of 18 U.S.C. §§ 1344 and 2. (See Compl. ¶¶ 1-6.) The Complaint alleges that that Defendants orchestrated a conspiracy whereby they laundered over $5 million in proceeds of an elder fraud scheme. (See id. ¶¶ 7-15.) According to the Complaint, elderly victims were targeted through deceptive communications and induced to transfer funds into bank accounts held by limited liability companies associated with Vakil (the "Vakil LLCs"). (See id.) These funds were subsequently transferred from Vakil LLCs to other entities, including Refine Max Inc. ("Refine Max"), a business associated with Lohani that purportedly engaged in gold bullion transactions. (See id.) Refine Max then allegedly transferred these funds to entities controlled by Patel. (See id.)

2

The Complaint alleges that, as part of this conspiracy, Defendants communicated with one another either by email, WhatsApp, and/or phone, and that Vakil maintained an electronic ledger that tracked victim deposits and reflected distributions among participants. (See id. ¶¶ 13, 20, 35.) The Complaint also alleges that certain Defendants sent falsified documents to a bank serving Refine Max that had flagged the transfer of victim funds as potentially fraudulent. (See id. ¶ 14.)

On November 21, 2024, Magistrate Judge Stewart D. Aaron authorized a warrant to search and seize the contents of an email account used by Vakil (the "Vakil Email Warrant"). The Vakil Email Warrant authorized the Government to review thirteen categories of evidence that were likely to be found in the email account. (Vakil Email Warrant, Att. A at 2-3.)

On March 14, 2025, United States Magistrate Judge Shon T. Erwin, authorized a warrant (the "Vakil Premises Warrant," Dkt. 49-1, Ex. A, and collectively with the Vakil Email Warrant, the "Vakil Warrants") to search and seize evidence from Vakil's person and from a Chickasha, Oklahoma residence (the "Chickasha Residence"). The Vakil Premises Warrant authorized the search and seizure of "all electronic devices carried by [Vakil] at the time of the search," and "any cellphones, tablets, computers, and other electronic devices

3

that may contain any electronically stored information falling within" nine categories of evidence. (Vakil Premises Warrant, Att. A-1 at 1 and Att. A-2 at 2.) The Vakil Premises Warrant also authorized law enforcement officers to obtain from Vakil any physical biometric characteristics necessary to unlock any device that was subject to seizure pursuant to the Vakil Premises Warrant. (See id. at Att. A-1 at 3; Att. A-2 at 3-4.) Specifically, the biometric unlock provision of the Vakil Premises Warrant provided that:

> In executing the requested warrant, law enforcement agents are authorized, if law enforcement personnel encounter any device(s) that are subject to seizure pursuant to this warrant and may be unlocked using biometric features, to obtain from Ratansha Vakil the display of any physical biometric characteristics (such as fingerprint/thumbprint or facial characteristics) necessary to unlock any device(s), including to (1) press or swipe Vakil's fingers (including thumbs) to the fingerprint scanner of the device(s); (2) hold the device(s) in front of Vakil's face to activate the facial recognition feature; and/or (3) hold the device(s) in front of Vakil's face to activate the iris recognition feature, for the

4

purpose of attempting to unlock the device(s) in order to search the contents as authorized by this warrant.

(Id.)

The Vakil Premises Warrant was supported by an affidavit signed by FBI Special Agent Andrew Lewis (the "Vakil Affidavit" or "Vakil Aff.," Dkt. No. 49-2, Ex. B). The Vakil Affidavit summarized, incorporated by reference, and attached the Complaint. (See Vakil Aff. ¶ 7.)

On March 17, 2025, United States Magistrate Judge Steven L. Tiscione authorized a search and seizure warrant for Patel's residence in Oyster Bay, New York, and for any cellphones belonging to or used by Patel (the "Patel Warrant"). The application was supported by an affidavit signed by FBI Special Agent Andrew Lewis (the "Patel Affidavit" or "Patel Aff.," Dkt. No 48-1, Ex. A), which incorporated by reference and attached the Complaint. (See Patel Aff. ¶¶ 7-8.)

On March 18, 2025, the Defendants were arrested, and law enforcement officers executed the warrants to search the residences of both Patel and Vakil. (See Dkt. No. 48 at 2.) During the searches, law enforcement officers seized, among other items, Patel and Vakil's cellphones. (See id.)

On April 15, 2025, a grand jury sitting in this District returned the Indictment, charging the Defendants with conspiracy to commit money laundering, conspiracy to commit bank fraud, and bank fraud. (See Dkt. 20.)

On February 6, 2026, Patel filed a motion to suppress evidence and compel discovery (the "Patel Motion" or "Patel Mot.," Dkt. No. 44). On February 17, Vakil filed his motion to suppress evidence (the "Vakil Motion," or "Vakil Mot.," Dkt. No. 47). On February 20 and February 27, the Government filed its oppositions to Patel's Motion (the "Patel Opp.," Dkt. No. 48) and Vakil's Motion (the "Vakil Opp.," Dkt. No. 49), respectively. On March 9, Patel filed a reply in support of his motion (the "Patel Reply," Dkt. No. 50).

## II. <u>DISCUSSION</u>

### A. SUPPRESSION OF EVIDENCE SEIZED PURSUANT TO THE PATEL WARRANT

Patel seeks to suppress all evidence obtained pursuant to the Patel Warrant, or, alternatively, requests an evidentiary hearing. Patel argues that suppression is required because: (1) the Patel Affidavit submitted in support of the Patel Warrant included a material misstatement that Patel "created fraudulent invoices" submitted to a bank in response to flagged wire transfers (Patel Aff. ¶ 8(f)) and (2) the affidavit does not allege facts that support Patel's

6

knowledge that the funds at issue were proceeds of elder fraud. (See Patel Mot. at 1.)

The Government opposes suppression, arguing that: (1) there are no material misrepresentations in the Patel Affidavit, (2) the Patel Affidavit supports probable cause that Patel committed bank fraud and conspiracy to commit bank fraud even without the statement that Patel "created fraudulent invoices," (3) the Patel Affidavit establishes probable cause that Patel had the required knowledge to commit money laundering conspiracy, and (4) the Patel warrant was executed in good faith. (See Patel Opp. 7-16.)

### 1. FOURTH AMENDMENT

The Fourth Amendment mandates that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "Though a warrant affidavit is presumed to be correct, in certain circumstances . . . a defendant may challenge the truthfulness of factual statements made in the affidavit, and thereby undermine the validity of the warrant and the resulting search or seizure." United States v. Kidd, 386 F. Supp. 3d 364, 371 (S.D.N.Y. 2019) (internal alterations and citation omitted), aff'd, No. 22-287-CR, 2023 WL 7290904 (2d Cir. Nov. 6, 2023). To mandate an evidentiary hearing

7

pursuant to Franks v. Delaware, 438 U.S. 154 (1978), the Defendant must show that the warrant application contained "intentional and material misrepresentations or omissions." United States v. Awadallah, 349 F.3d 42, 64 (2d Cir. 2003). However, a material misstatement -- even one made with "reckless disregard for the truth" -- in a warrant application does not automatically entitle a defendant to an evidentiary hearing pursuant to Franks. United States v. Rajaratnam, 719 F.3d 139, 157 (2d Cir. 2013). "Rather, the district court is permitted to determine whether, based on the record before the magistrate judge, and disregarding the challenged material, there was sufficient evidence to find probable cause without the material misstatement." Kidd, 386 F. Supp. 3d at 371.

The Court is persuaded that the Patel Affidavit supports finding probable cause that Patel committed bank fraud and conspiracy to commit bank fraud even without the statement that Patel created fraudulent invoices. Omitting that statement, the following facts in the Patel Affidavit, which incorporated the Complaint, support probable cause that Patel engaged in bank fraud conspiracy and bank fraud: (1) Patel directed Vakil to send Know Your Customer ("KYC") forms to Refine Max, which falsely identified each of the Vakil LLCs as a "consultant" for "[b]ullion" (Compl. ¶ 22(b)); (2) after

Refine Max's bank flagged the transfer of victim funds between Vakil LLCs and Refine Max as potentially fraudulent, Vakil sent Patel and a Refine Max employee an email attaching a false KYC form, which Lohani then submitted to Refine Max's bank, along with a fraudulent invoice for the sale of gold bullion (Compl. ¶ 27(c)); (3) Vakil again informed Patel after Vakil learned that Refine Max's bank had flagged two additional transfers of victim funds between the Vakil LLCs and Refine Max as potential fraud (Compl. ¶ 27(h)); and (4) Vakil maintained electronic ledgers that he sent Patel documenting the flow of all incoming victim funds, and these ledgers identified the flagged transactions, labeling at least one such transaction as a "Bad check" (Compl. 27(g),(k)). Together, these facts are sufficient to support a reasonable finding of probable cause that Patel engaged in bank fraud and conspiracy to commit bank fraud.

The Court also finds that the Patel Affidavit supports finding probable cause that Patel had sufficient knowledge to commit money laundering conspiracy. The Court notes that Patel did not need to know that the proceeds specifically came from elder fraud. It is well established that a defendant needs to know only that the proceeds generally come from criminal activity. See United States v. Maher, 108 F.3d 1513, 1526 (2d Cir. 1997) ("As to the defendant's knowledge, the

9

government need only prove that he knew that the property represented the proceeds of *some form* of unlawful activity." (internal quotation marks and alterations omitted)). Additionally, probable cause of a defendant's knowledge can "be based on reasonable inference from the facts presented based on common sense and experience." United States v. Singh, 390 F.3d 168, 182 (2d Cir. 2004) (internal quotation marks omitted).

The Patel Affidavit supports a reasonable inference of Patel's knowledge that the money "represented the proceeds of *some form* of unlawful activity." Maher, 108 F.3d at 1526. The Patel Affidavit, which incorporated the Complaint, alleges the following in support of Patel's knowledge: (1) at Patel's direction, Vakil began transferring victim funds from the Vakil LLCs to Refine Max, even though Patel had no formal affiliation with the Vakil LLCs or Refine Max (Compl. ¶ 22); (2) Refine Max then transferred victim funds to entities controlled by Patel (Compl. ¶¶ 34(a)-(c)); (3) Vakil sent some victim funds directly from Vakil LLCs to entities controlled by or associated with Patel (Comp. ¶¶ 35(a)-(d)); (4) Vakil informed Patel when transfers of victim funds were flagged as potentially fraudulent by a bank (Compl. ¶ 14); (5) the number of different bank accounts and entities that were used to transfer victim funds and the fact that the

10

Defendants stopped using certain accounts after wire transfers were flagged as potentially fraudulent (Compl. ¶¶ 15, 30); (6) Vakil and his uncharged associates maintained ledgers, documenting the deposit of victim funds into the Vakil LLCs and their later transfer to Refine Max and entities controlled by or associated with Patel (Compl. ¶¶ 26, 35); and (7) Vakil emailed those ledgers to Patel to keep him informed of their operations (Compl. ¶¶ 26, 35). Together, these facts are sufficient to support a reasonable finding of probable cause that Patel knew he was laundering criminal proceeds.

### 2. EXCLUSIONARY RULE – GOOD FAITH EXCEPTION

The Court also finds that even if the Patel Warrant was deficient for other reasons – which it is not – the good faith exception would still support its validity. Under the "good faith" exception, the exclusionary rule does not apply to evidence "obtained in objectively reasonable reliance on a subsequently invalidated search warrant." United States v. Leon, 468 U.S. 897, 922 (1984). While the "burden is on the government to demonstrate the objective reasonableness of the officers' good faith reliance on an invalidated warrant," courts must be "mindful that, in Leon, the Supreme Court strongly signaled that most searches conducted pursuant to a warrant would likely fall within its protection." United

11

States v. Clark, 638 F.3d 89, 100 (2d Cir. 2011) (internal quotation marks omitted).

"The Supreme Court has identified four circumstances where the [good faith] exception to the exclusionary rule does not apply: '(1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable.'" United States v. Guan, No. 24-CR-322, 2026 WL 160995, at *8 (S.D.N.Y. Jan. 21, 2026) (quoting Clark, 638 F.3d at 100)). "Thus, the critical question is 'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" Id. (quoting Leon, 468 U.S. at 922 n.23).

Here, even if the Court were to find that the Patel Warrant was issued based on misstatements or lacked sufficient allegations that Patel knew he was laundering criminal proceeds, which it does not, the evidence seized pursuant to the Patel Warrant would not be suppressed because of the good faith exception. First, there is no allegation that the magistrate judge who issued the Patel Warrant was knowingly misled or abandoned their judicial role. Second,

12

for the reasons explained above, the Patel Warrant was not facially deficient or so lacking in probable cause that law enforcement's reliance on it was unreasonable.

Accordingly, the Court denies the part of Patel's Motion that requests the suppression of all evidence obtained pursuant to the Patel Warrant, or, alternatively, requests an evidentiary hearing pursuant to Franks.

### B. SUPPRESSION OF EVIDENCE SEIZED PURSUANT TO THE VAKIL PREMISES WARRANT

Vakil seeks to suppress all evidence obtained pursuant to the Vakil Premises Warrant, or, alternatively, requests an evidentiary hearing pursuant to Franks. Vakil argues that suppression is required because the Vakil Affidavit mischaracterized or omitted certain information. Vakil further argues that the Vakil Premises Warrant violates the Fourth Amendment because it is overbroad for multiple reasons and that the biometric-unlock clause violates both the Fourth and Fifth Amendments. Lastly, Vakil argues that the good faith exception does not apply.

The Government opposes suppression and argues that: (1) the Vakil Premises Warrant did not mischaracterize or omit certain information, (2) the Vakil Premises Warrant does not violate the Fourth Amendment because it is not overbroad, (3)

13

the biometric-unlock provision doesn't violate the Fourth or Fifth Amendments, and (4) the good faith exception does apply.

### 1. The Vakil Premises Warrant Does Not Contain Any Material Misstatements or Omissions

Vakil asserts that suppression under the Vakil Premises Warrant is appropriate because the Vakil Affidavit contains the following omissions: (1) that Vakil had no criminal history, (2) that Vakil was never previously the subject of any active investigations, and (3) that Vakil has an active Texas address and was not the owner of the Chickasha Residence. (See Vakil Mot. at 9-13.)

Regarding Vakil's criminal history, the Court agrees with the Government that warrants are not required to disclose that a subject lacked prior criminal convictions. In Walczyk v. Rio, 496 F.3d 139 (2d Cir. 2007), the Second Circuit stated that "we expect that when a magistrate, mindful of the government's burden to demonstrate probable cause, reviews a warrant application that does not report a prior conviction for a particular crime, the magistrate assumes for purposes of determining whether the government has carried its burden that no such conviction exists." 496 F.3d at 161. Following this logic, the Government similarly was not required to volunteer that Vakil had not been the subject of a previous investigation, as the magistrate judge would likewise

14

"assume[] for purposes of determining whether the government has carried its burden that no such" prior active investigations "exist[]." Id.

Lastly, the Vakil Affidavit and Complaint did in fact address Vakil's active Texas address and Vakil's lack of ownership of the Chickasha Residence. The Vakil Affidavit and Complaint expressly stated that: (1) the law enforcement officers who conducted a January 2024 interview concerning an unrelated investigation "identified Vakil based on a Texas driver's license" (Vakil Aff. ¶ 12(a); Compl. ¶ 20(a)); (2) the Chickasha Residence "is the residence of Individual-2," whose "first name and last initial are 'Julia H.'" (Vakil Aff. ¶ 12(a); Compl. ¶ 20(a)); and (3) Vakil told the officers that "he stays in both Texas and in Oklahoma." (Aff. ¶ 12(a)).

Accordingly, the Court finds that the Vakil Premises Warrant did not contain any material misstatements or omissions.

2. FIFTH AMENDMENT – No Violation by the Vakil Premises Warrant's Biometric Unlock Provision

Vakil argues that the inclusion of a biometric unlock provision in the Vakil Premises Warrant facially violates the Fifth amendment by compelling testimonial self-incrimination. The biometric unlock provision allowed the government to obtain from Vakil the display of any necessary physical

15

biometric characteristics, such as a fingerprint, thumbprint, or facial characteristics, to unlock any electronic device subject to seizure pursuant to the Vakil Premises Warrant. (See Vakil Premises Warrant at Att. A-1 at 3; Att. A-2 at 3-4.)

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. To invoke this privilege, a defendant must establish three elements: the communication at issue must be (1) compelled, (2) incriminating, and (3) testimonial. See Hiibel v. Sixth Judicial District Court of Nevada, 542 U.S. 177, 189 (2004). Vakil contends that the compelled use of biometric features to unlock an electronic device is "testimonial" within the meaning of the Fifth Amendment because it requires the defendant to use the contents of his mind to select the correct biometric input. (See Vakil Mot. at 24-39.)

The Court agrees with the Government that the biometric unlock provision does not facially violate the Fifth Amendment. District courts in the Second Circuit have found that "the compelled use of a defendant's biometric features to unlock a phone does not amount to a testimonial communication, and therefore does not run afoul of the Fifth Amendment." United States v. Eldarir, 681 F. Supp. 3d 43, 51

16

(E.D.N.Y. 2023); see also United States v. Gogic, 770 F. Supp. 3d 529, 538-39 (E.D.N.Y. 2025) ("Unlike biometric credentials, such as facial recognition or a fingerprint, the revelation of a passcode requires the accused to reveal the contents of his mind." (internal quotation marks omitted)); United States v. Kostin, No. 24-CR-91, 2025 WL 1504409, at *12 (S.D.N.Y. May 27, 2025) ("The [] Warrant permitted the FBI to compel Mr. Wolfson to provide his biometrics to unlock his devices."). Neither Vakil nor the Court has identified any case in the Second Circuit supporting the contention that the compelled use of biometrics to unlock a device is a testimonial act that facially violates the Fifth Amendment.

The D.C. Circuit Court's decision in United States v. Brown, 125 F.4th 1186 (D.C. Cir. 2025), on which Vakil relies, does not counsel otherwise. Brown does not support Vakil's proposition that biometric unlock provisions are facially invalid. In that case, the court found that the use of a suspect's thumbprint to unlock a phone was testimonial because the act of unlocking a phone using biometric characteristics communicated that the suspect knew how to open the phone and had control of the device. Brown, 125 F.4th at 1202-04. However, the court in Brown noted that its "holding is consistent with the Ninth Circuit's decision in [United States v.] Payne." Id. at 1204 n.2. In Payne, the

Ninth Circuit held that the FBI grabbing the suspect's thumb and using it to unlock the phone was not testimonial because the officer had not required the suspect to engage in an expressive, self-incriminating act. Payne, 99 F.4th 495, 500 (9th Cir. 2024). This differed from the facts in Brown, where the suspect independently selected which finger he used to unlock the device, thereby engaging in an expressive act. Brown, at 1202, 1204 n.2. Brown and Payne together make clear that biometric unlock provisions are not facially unconstitutional. These cases instead indicate that the way law enforcement officers compel a suspect to unlock an electronic device may, in certain circumstances not present here, violate the Fifth Amendment.

In the case before the Court, Vakil makes only a facial challenge to the unlock provision rather than a challenge to the specific circumstances of his case. (Vakil Mot. at 21-39.) Accordingly, Brown does not support Vakil's Fifth Amendment facial challenge. Given the Second Circuit case law permitting similar biometric unlock provisions, the Court will reject Vakil's Fifth Amendment challenge to the Vakil Premises Warrant's biometric unlock provision.

> 3. The Vakil Premises Warrant's Biometric Unlock Provision Does Not Make the Warrant Overbroad

Vakil additionally argues that the Vakil Premises Warrant is overbroad in violation of the Fourth Amendment because the biometric unlock provision applied to all devices seized pursuant to the Warrant and because the Affidavit did not provide probable cause that Vakil was the "user or owner" of each "specific device." (Vakil Mot. at 8, 13.)

The Fourth Amendment "overbreadth inquiry asks whether the warrant authorized the search and seizure of items as to which there is no probable cause." United States v. Arias-Casilla, No. 21-CR-218-1, 2022 WL 2467781, at *6 (S.D.N.Y. July 6, 2022) (internal quotations and alterations omitted). "Thus, a warrant is overbroad if its description of the objects to be seized . . . is broader than can be justified by the probable cause upon which the warrant is based." Id. (internal quotation marks omitted).

As discussed above, warrants containing biometric unlock provisions are permissible in the Second Circuit. Vakil has not provided, and the Court has not identified, any case in the Second Circuit where a court has found a biometric unlock provision violated the Fourth Amendment. Here, the Vakil Premises Warrant authorized law enforcement officers to obtain biometrics from Vakil alone and does not raise any concerns of overbreadth.

19

It is also well settled law that warrants do not need to establish probable cause on a device-by-device basis. "A warrant does not become overbroad for having the phrase 'any or all electronic devices.'" United States v. An, 733 F. Supp. 3d 77, 104 (E.D.N.Y. 2024). A warrant is overbroad only if it allows the seizure of items "wholly unrelated" to the offense for which the Government has probable cause, or if it fails to provide "any guidance as to what kind of [electronic] files should be seized." United States v. Romain, 678 F. App'x 23, 26 (2d Cir. 2017) (summary order).

Here, the Vakil Affidavit and Complaint established more than sufficient probable cause to search electronically stored information ("ESI") or seized electronic devices by describing Vakil and his co-conspirators communicating using email, WhatsAPP, and phones, and Vakil's practice of utilizing electronic ledgers to document the transfer of victim funds. (See Vakil Aff. ¶¶ 9-12, 14-15.) The Vakil Premises Warrant also limited the scope of the search by providing procedures for how evidence should be searched and specifying nine categories of evidence, which further specified the types of files and/or data that may be seized. (See Vakil Premises Warrant Att. Att. A-1 at 1-3, Att. A-2 at 1-2); see United States v. Yu, No. 22-CR-208, 2023 WL 4687970, at *11 (E.D.N.Y. July 21, 2023) (finding warrant not overbroad

where it specified "the types of files and/or data that may be seized, such as email contacts, instant messaging logs, usernames and passwords, among others").

4. The Vakil Premises Warrant's Clause Permitting Review of All ESI from Seized Devices Does Not Make the Warrant Overbroad

Vakil argues that the Vakil Premises Warrant is overbroad because it contains a clause authorizing law enforcement personnel "to conduct a complete review of all the ESI from seized devices if necessary to evaluate their contents and to locate all data responsive to the [W]arrant." (Vakil Premises Warrant Att. A-1 at 2-3, A-2 at 3). (See Vakil Mot. at 21-23.)

"It has long been perfectly appropriate to search the entirety of a premises or object as to which a warrant has issued based on probable cause, for specific evidence as enumerated in the warrant, which is then to be seized." United States v. Barrett, No. 23-CR-623, 2025 WL 371084, at *22 (S.D.N.Y. Feb. 3, 2025) (quoting United States v. Ulbricht, No. 14-CR-00068, 2014 WL 5090039, at *14 (S.D.N.Y. Oct. 10, 2014), aff'd, 858 F.3d 71). "These principles apply with equal force to searches of electronic data and devices." Id. "[C]ourts in this Circuit routinely uphold the validity of warrants that, as in this case, authorize searches of the

21

entirety of a cellphone for data responsive to a warrant . . ." Arias-Casilla, 2022 WL 2467781, at *6 (internal alterations and citations omitted).

Here, the Vakil Premises Warrant authorized a review of all ESI only to the extent necessary and restricted the seizure of the particularized evidence categories, not the entire device. (See Warrant Att. A-1 at 1-3, Att. A-2 at 1-4.) Accordingly, the Court finds that the clause permitting review of all ESI from seized devices does not make the Vakil Premises Warrant overbroad.

> 5. The Temporal Scope of the Warrant Does Not Make It Overbroad

Vakil also argues that the Vakil Premises Warrant's authorization of review of ESI from January 1, 2023, to the present (which was March 14, 2025, when the Vakil Premises Warrant was issued), renders the warrant overbroad. The Court disagrees. The Warrant included a temporal scope of January 1, 2023, to March 14, 2025, that sufficiently covers the time frame of the charged conspiracy that is alleged to have taken place from April 2023 through December 2023. This authorization allowed law enforcement to seize ESI beginning three months before the conspiracy began and fifteen months after it ended. Given the complexity of the charged conspiracy and the fact that evidence of criminal activity can be found

22

"months or years after it occurred" (Vakil Aff. ¶ 19), the Court finds that the temporal scope of the Vakil Premises Warrant was appropriate.

　　　　6. The Good Faith Exception Applies to the Vakil Premises Warrant

The Court also finds that even if the Vakil Warrant was deficient for other reasons – which it is not – the good faith exception would still support its validity. Vakil argues that the good faith exception should not apply because the biometric unlock provision rendered the Vakil Premises Warrant "so facially deficient that reliance upon it is unreasonable." United States v. Moore, 968 F.2d 216, 222 (2d Cir. 1992); (See Mot. at 39-40). However, as discussed above, courts in the Second Circuit have authorized biometric unlock provisions. Accordingly, reliance upon the Vakil Premises Warrant was reasonable and the good faith exception would apply.

**C. COMPELLING DISCOVERY OF VAKIL'S EMAILS AND THE COMPLETE EXTRACT OF VAKIL'S PHONE**

Patel argues that Federal Rule of Criminal Procedure 16(a)(1)(E) ("Rule 16(a)(1)(E)") requires the Government to disclose all of Vakil's emails and a complete extraction of Vakil's cellphone. (Patel Mot. at 6.) Patel contends that the Government possesses this information and that it is

23

material. (Id.) The Government argues that it has already produced all responsive emails and phone communications and that the cellphone extract and Vakil's emails that Patel requests are not within the Government's possession, custody, or control. (Patel Opp. at 18-19.) The Government also argues that it is not obligated to make any further production because Vakil refused to consent to cross-produce data from his email and phone to his co-defendants. (Id. at 18-19.) Finally, the Government argues that even if it did possess this information, it would not be material. (Id. at 19.)

Pursuant to Rule 16(a)(1)(E), the Government must provide an item to the defendant "if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant." Fed. R. Crim. Pro. 16(a)(1)(E). Under this rule, "[d]ocuments that the Government has reviewed or has access to must be provided to aid a defendant in preparing his defense." United States v. Giffen, 379 F. Supp. 2d 337, 343 (S.D.N.Y. 2004). "Evidence is material" to the defense if it would "enable the defendant significantly to alter the quantum of proof in his favor," United States v. Maniktala, 934 F.2d 25, 29 (2d Cir. 1991), or "if it could be used to counter the government's

24

case or to bolster a defense," Ulbricht, 858 F.3d at 109. "The defendant must make a prima facie showing of materiality and must offer more than the conclusory allegation that the requested evidence is material." United States v. Urena, 989 F. Supp. 2d 253, 261 (S.D.N.Y. 2013). "Materiality means more than the evidence in question bears some abstract logical relationship to the issues in the case. There must be some indication that the pretrial disclosure of the disputed evidence would have enabled the defendant significantly to alter the quantum of proof in his favor." United States v. Alexandre, No. 22-CR-326, 2023 WL 416405, at *9 (S.D.N.Y. Jan. 26, 2023) (quoting Maniktala, 934 F.2d at 28).

The Court denies Patel's request to compel because he has not established that Vakil's unproduced emails and phone data are material. Here, the Court accepts the Government's representation that it has produced all the responsive sets from Vakil's phone and email account. (Patel Opp. at 19.) Patel argues that the unproduced evidence may bear on the Government's theory of Patel's knowledge and coordination since that theory is based on Patel's communications with Vakil. (Patel Reply at 6.) However, because the unproduced evidence bears only some "abstract logical relationship" to the issue of Patel's knowledge and coordination, the Court

25

denies Patel's request to compel discovery. <u>Alexandre</u>, 2023 WL 416405, at *9.

### III. <u>ORDER</u>

For the foregoing reasons it is hereby

**ORDRED** that the motion of defendant Sunil Patel ("Patel") to suppress all evidence seized pursuant to a March 17, 2025, warrant and compel discovery (Dkt. No. 44) is **DENIED**; and it is further

**ORDERED** that the motion of defendant Ratansha Vakil ("Vakil") to suppress all evidence seized pursuant to a March 14, 2025, warrant (Dkt. No. 47) is **DENIED**.

**SO ORDERED.**

Dated:    27 March 2026
          New York, New York

_____
Victor Marrero
U.S.D.J.

26